MICHAEL C. PORTANOVA, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Portanova v. Commissioner
Docket No. 1775-80.
United States Tax Court
T.C. Memo 1982-664; 1982 Tax Ct. Memo LEXIS 77; 45 T.C.M. (CCH) 124; T.C.M. (RIA) 82664; November 18, 1982. Jon Holden Adams, for the petitioner. Bradford A. Johnson, *78 for the respondent. NIMS
MEMORANDUM FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a)
Sec. 6653(b) [1]
1973
$5,062.44
($16.82) [2]
$2,699.42
1974
4,180.77
3,570.08
1975
8,679.88
4,339.94
1976
9,565.15
4,783.58
Due to concessions, [3] the issue for decision is whether petitioner is liable for the additions to tax under section 6653(b) for each of the years 1973 through 1976, inclusive. *79 FINDINGS OF FACT Some of the facts have been stipulated. The stipulation and the exhibits attached thereto are incorporated herein by reference. Petitioner Michael C. Portanova resided in Poughkeepsie, New York, at the time the petition was filed. During the years 1973 through 1976, petitioner was employed by the International Business Machines Corporation ("IBM") as a computer engineer. At that time, petitioner held a bachelor's degree in electrical engineering from Rensselaer Polytechnic Institute and a master's degree in electrical engineering from Syracuse University. In 1973, petitioner was single and 47 years of age. Both his parents, long in ill health, died that year. During each of the years 1973 through 1976, petitioner prepared and filed his income tax returns without the assistance of others. During the taxable years 1973, 1974, 1975 and 1976, petitioner reported wage income from IBM in the respective amounts of $22,315.60, $23,020.40, $25,107.15 and $25,113.40. During the taxable years 1973, 1974, 1975 and 1976, petitioner earned interest income on the following accounts at various financial institutions as set forth below: Financial Institution
Date
Maturity
Initial
and Account Number
Opened
Date
Deposit
1973
Albany Savings Bank
1) Cert. of Deposit
#0300521-2
04/01/72
04/01/74
$19,361.82
$1,270.78
2) Cert. of Deposit
#0308697-2
04/01/74
04/03/78
14,700.00
3) Cert. of Deposit
#0308698-0
04/01/74
04/01/75
7,162.10
4) Cert. of Deposit
#0390724-3
04/01/75
04/01/81
7,649.92
5) Cert. of Deposit
#0381545-3
07/17/72
07/17/74
563.59
36.27
6) Cert. of Deposit
#0303228-1
11/24/72
03/30/74
12,731.52
806.62
7) Cert. of Deposit
#0560485-5
11/30/74
01/30/80
5,000.00
City and County Savings
Bank
1) Cert. of Deposit
#15-1580
04/06/72
04/06/74
12,892.23
845.65
2) Cert. of Deposit
#15-5433
11/24/72
03/30/74
13,771.73
877.58
Renewed To
03/30/78
Dollar Savings Bank of New
York
1) Cert. of Deposit
#46-18288-8
07/30/73
07/30/77
2,500.00
84.82
2) Cert. of Deposit
#46-21531-6
04/04/74
04/04/75
6,877.00
Renewed To
04/04/76
Renewed To
04/04/77
Renewed To
04/04/79
First Federal
Savings & Loan
Association of Rochester
1) Cert. of Deposit
#175366
04/01/72
04/01/74
10,708.71
708.66
2) Cert. of Deposit
#175485
11/24/72
11/24/74
12,984.63
833.66
3) Savings Account
#200297
11/24/72
333.93
4) Cert. of Deposit
#41-9000012
04/01/74
04/01/78
12,093.29
5) Cert. of Deposit
#41-1100073
11/24/76
02/24/80
16,887.29
6) Cert. of Deposit
#41-1200021
11/24/74
11/24/75
14,799.42
Renewed To
11/24/76
Greenwich Savings Bank
1) Cert of Deposit
#A9073733-8
04/05/74
04/05/77
$ 7,000.00
Home Savings Bank of
Upstate New York
1) Savings Account
#2520040
04/27/70
374.83
2) Cert. of Deposit
#2600546
04/01/70
04/01/72
12,558.55
929.61
Renewed To
04/01/74
3) Cert. of Deposit
#3610807
03/16/74
03/16/75
3,500.00
4) Cert. of Deposit
#3610853
04/01/74
04/01/78
14,700.00
5) Cert. of Deposit
#3614153
03/17/75
09/17/77
3,738.38
I.B.M. Poughkeepsie
Employees
Federal Credit Union
1) Account #238384
10/16/70
500.25
1,207.96
Mechanics Exchange
Savings Bank
1) Savings Account
#5501118
03/17/73
2,700.00
142.03
2) Cert. of Deposit
#12700108
04/01/74
941.08
3) Cert. of Deposit
#15900359
04/01/74
04/01/78
14,700.00
4) Cert. of Deposit
#15650316
04/01/74
04/01/76
5,087.11
5) Cert. of Deposit
#15900739
04/01/76
04/01/80
5,803.87
National Bank of North
America
1) Cert. of Deposit
#E000324
07/23/73
07/23/77
11,563.45
396.90
National Savings Bank
1) Cert. of Deposit
#1-22-24598
11/24/72
03/30/74
$10,323.34
$ 763.40
2) Cert. of Deposit
#1-20532-02
04/01/70
04/01/74
15,804.84
1,168.57
3) Cert. of Deposit
#2-26918-02
04/01/74
04/01/78
14,700.00
4) Cert. of Deposit
#2-26919-02
04/01/74
04/01/75
5,399.17
Renewed To
04/01/80
Poughkeepsie Savings
Bank
1) Cert. of Deposit
#1-607600-9
02/21/74
02/21/75
3,500.00
Renewed To
02/21/76
Renewed To
02/21/77
2) Savings Account
#1-904022
09-08-64
229.63
881.03
3) Cert. of Deposit
#1-600232-2
03/29/72
03/29/74
10,000.00
1,628.03
Renewed To
03/29/78
Schenectady Savings
Bank
1) Cert. of Deposit
#03-710858-1
02/28/74
02/28/75
3,500.00
Renewed To
02/28/76
2) Cert. of Deposit
#03-732632-2
03/30/74
03/31/77
14,000.00
Troy Savings Bank
1) Cert. of Deposit
#75015914
04/12/74
06/30/78
14,557.67
Ulster Savings Bank
1) Cert. of Deposit
#374-1024
04/01/74
04/01/78
14,700.00
2) Cert. of Deposit
#370-1025
04/01/74
04/01/77
2,000.00
Union Dime Savings
Bank
1) Cert. of Deposit
#147943-33
08/07/73
08/07/77
10,000.00
340.19
Total Interest Income
$14,571.60
*80 Financial Institution
Interest Income
and Account Number
1974
1975
1976
Albany Savings Bank
1) Cert. of Deposit #0300521-2
$ 329.05
2) Cert. of Deposit #0308697-2
863.47
1,229.52
1,330.43
3) Cert. of Deposit #0308698-0
363.18
124.64
4) Cert. of Deposit #0390724-3
464.72
665.16
5) Cert. of Deposit #0381545-3
20.11
6) Cert. of Deposit #0303228-1
208.86
7) Cert. of Deposit #0560485-5
28.06
342.43
420.58
City and County Savings Bank
1) Cert. of Deposit #15-1580
228.67
2) Cert. of Deposit #15-5433
1,120.75
1,262.65
1,366.25
Dollar Savings Bank of New York
1) Cert. of Deposit #46-18288-8
211.27
228.55
247.93
2) Cert. of Deposit #46-21531-6
346.14
488.06
521.39
First Federal Savings & Loan
Association of Rochester
1) Cert. of Deposit #175366
180.03
2) Cert. of Deposit #175485
784.92
3) Savings Account #200297
4) Cert. of Deposit #41-9000012
712.99
1,011.66
1,094.69
5) Cert. of Deposit #41-1100073
79.33
6) Cert. of Deposit #41-1200021
101.88
1,015.02
970.97
Greenwich Savings Bank
1) Cert of Deposit #A9073733-8
$ 350.98
$ 500.69
$ 536.31
Home Savings Bank of Upstate New York
1) Savings Account #2520040
227.69
235.68
285.95
2) Cert. of Deposit #2600546
238.04
3) Cert. of Deposit #3610807
188.78
49.60
4) Cert. of Deposit #3610853
866.75
1,229.81
1,330.78
5) Cert. of Deposit #3614153
208.84
280.36
I.B.M. Poughkeepsie Employees
Federal Credit Union
1) Account #238384
1,339.24
1,581.72
1,939.23
Mechanics Exchange Savings Bank
1) Savings Account #5501118
259.66
317.54
350.56
2) Cert. of Deposit #12700108
240.99
3) Cert. of Deposit #15900359
866.84
1,229.99
1,330.88
4) Cert. of Deposit #15650316
258.98
364.22
93.56
5) Cert. of Deposit #15900739
343.51
National Bank of North America
1) Cert. of Deposit #E000324
994.88
1,019.49
1,103.18
National Savings Bank
1) Cert. of Deposit #1-22-24598
$ 191.11
2) Cert. of Deposit #1-20532-02
299.23
3) Cert. of Deposit #2-26918-02
866.78
1,229.89
1,330.86
4) Cert. of Deposit #2-26919-02
274.85
386.55
463.70
Poughkeepsie Savings Bank
1) Cert. of Deposit #1-607600-9
177.33
250.49
300.89
2) Savings Account #1-904022
364.23
340.64
383.35
3) Cert. of Deposit #1-600232-2
1,033.00
1,229.42
1,328.50
Schenectady Savings Bank
1) Cert. of Deposit #03-710858-1
178.80
251.98
302.23
2) Cert. of Deposit #03-732632-2
729.98
1,171.17
1,267.25
Troy Savings Bank
1) Cert. of Deposit #75015914
812.08
1,214.70
1,313.86
Ulster Savings Bank
1) Cert. of Deposit #374-1024
862.67
1,229.47
1,330.48
2) Cert. of Deposit #370-1025
101.31
143.10
153.33
Union Dime Savings Bank
1) Cert. of Deposit #147943-33
901.97
980.66
1,069.27
Total Interest Income
$18,125.55
$21,332.90
$23,534.77
*81 The petitioner reported interest income from the following accounts for the taxable years 1973, 1974, 1975 and 1976 in the amounts set forth below: Account
1973
1974
1975
1976
Albany Savings Bank
1) Cert. of Deposit
#0300521-2
$ 329.05
2) Cert. of Deposit
#0308693-0
124.64
3) Cert. of Deposit
#0303228-1
208.86
4) Cert. of Deposit
#0560485-5
342.43
City & County Savings Bank
1) Cert. of Deposit
#15-1580
228.67
2) Cert. of Deposit
#15-5433
465.25
Dollar Savings Bank
1) Cert. of Deposit
#46-21531-6
527.05
First Federal
Savings & Loan
1) Cert. of Deposit
#175366
180.03
2) Cert. of Deposit
#175485
785.52
3) Savings Account
#200297
333.93
4) Cert. of Deposit
#41-1200021
1,015.02
937.97
Greenwich Savings Bank
1) Cert. of Deposit
#A9073733-8
536.31
Home Savings Bank
1) Savings Account
#2520040
374.83
285.95
2) Cert. of Deposit
#2600546
238.04
3) Cert. of Deposit
#3610807
49.60
4) Cert. of Deposit
#3614153
280.36
I.B.M. Credit Union
1) Account #238384
904.82
1,581.72
1,939.23
Mechanics Exchange Savings
Bank
1) Savings Account
#5501118
$ 142.03
2) Cert. of Deposit
#15650316
316.76
87.59
93.56
3) Cert. of Deposit
#15900739
350.56
National Savings Bank
1) Cert. of Deposit
#1-22-24598
191.11
2) Cert. of Deposit
#1-20532-02
299.23
3) Cert. of Deposit
#2-26919-02
386.55
100.41
Poughkeepsie Savings Bank
1) Cert. of Deposit
#1-607600-9
65.88
2) Savings Account
#1-904022
881.03
383.35
Union Dime Savings Bank
1) Cert. of Deposit
#147943-33
980.66
Total Interest Income
Reported
$2,636.64
$3,242.52
$4,568.21
$5,500.63
*82 During the taxable years 1973, 1974, 1975 and 1976, the petitioner received dividend income from the following sources in the amounts set forth below: 1973
1974
1975
1976
International Business
Machines (I.B.M.)
$1,026.76
$1,340.00
$1,664.50
$2,163.00
Federated Media, Inc.
14.80
Penn Engineering Corp.
20.00
1.80
Total Dividends
$1,026.76
$1,354.80
$1,684.50
$2,164.80
The petitioner reported dividend income from I.B.M. on his income tax returns for the taxable years 1973, 1974, 1975 and 1976, in the amounts of $840.40, $950.40, $1,026.76 and $1,340.00, respectively. Petitioner reported no other dividend income in those years. Petitioner received income from the rental of a portion of a residence located at 404 Second Street, Albany, New York, in the amounts of $285 in 1973 and $1,140 in each of the years 1974, 1975 and 1976, which amounts the petitioner omitted from his income tax returns for said years. In connection with the rental property at 404 Second Street, Albany, New York, the petitioner incurred the following items of expense which were not claimed on his income tax returns for the taxable years 1973, 1974, 1975 *83 and 1976 in the amounts set forth below: Item
1973
1974
1975
1976
Taxes
$ 46.89
$192.83
$ 198.82
$ 216.32
Insurance
10.00
51.00
51.00
65.00
Water and Sewer Rents
8.98
35.53
35.53
35.53
Repairs
94.50
90.44
Travel
77.00
306.00
306.00
36.00
Depreciation
116.67
350.00
350.00
350.00
Total Rental Expenses
$259.54
$935.36
$1,035.85
$1,063.29
During the taxable year 1975, the petitioner sold 40 shares of Federated Media, Inc. stock realizing a net gain of $86 after the 50 percent reduction in the gain allowed by section 1202. The petitioner omitted the gain from this transaction on his 1975 income tax return. On December 15, 1975, a letter was mailed to the petitioner from the Andover Service Center informing him that he had omitted interest income from three sources for the taxable year 1973. The petitioner agreed with the increase in tax of $336.40 and the addition of a negligence addition in the amount of $16.82, and signed and returned the letter with payment on December 24, 1975. Petitioner employed his true social security number when he opened each of the savings accounts and certificates of deposit noted above. *84 Petitioner did not retain any records of his interest or dividend income in 1973 and 1974. Petitioner did not keep any records of the income or expenses associated with the rental of his real property located at 404 Second Street, Albany, New York, during the years 1973 through 1976. Subsequent to the filing of his 1976 income tax return, in 1977, petitioner received a second letter from the Andover Service Center, this time informing him that he had omitted interest and dividend income from nine sources for the taxable year 1974. The petitioner agreed with the increase in tax of $2,959.38. Subsequent to this second letter from the Andover Service Center, petitioner began a campaign of soliciting members of Congress to enact a law which in order to facilitate retirement savings would exempt from taxation interest earned on long-term certificates of deposit until such time as the certificates matured and the accumulated interest was withdrawn by the taxpayer for consumption. Petitioner sought to have this law made retroactive to the 1973 taxable year.
From the time the Internal Revenue Service began investigating petitioner for fraud in February, 1978, to the time of trial, *85 petitioner has cooperated with the government in attempting to reconstruct his unreported income for the taxable years 1973 through 1976. On February 23, 1978, petitioner signed a Form 872 consenting to the extension of the statute of limitations for his taxable year 1974 to June 30, 1979.On January 19, 1979, petitioner's attorney signed a Form 872 consenting to the extension of the statutes of limitation for petitioner's taxable years 1974 and 1975 to December 31, 1979. Respondent's statutory notice of deficiency herein was mailed to petitioner on December 6, 1979. OPINION The issue for decision is whether petitioner is liable for the additions to tax under section 6653(b) for fraud during each of the years 1973, 1974, 1975 and 1976. Respondent argues that petitioner's underreporting of income, which petitioner admits was done intentionally, [4] was done with fraudulent intent. Petitioner argues that his underreporting was the product only of an innocent misunderstanding of the tax laws and, to some extent, carelessness. *86 The existence of fraud is a question of fact to be resolved upon consideration of the entire record. . Respondent bears the burden of proving fraud by clear and convincing evidence. Section 7454(a); Rule 142(b). [5] To prove fraud, respondent must show that the taxpayer acted with specific intent to evade a tax believed to be owing. . Fraud may not be presumed or imputed; however, since direct evidence of fraud is seldom available, respondent may meet his burden of proof through circumstantial evidence. . "Although mere understatement of income standing alone is not sufficient to prove fraud, the consistent and substantial understatement of income is, by itself, strong evidence of fraud." . In the instant case we are persuaded of the existence of fraud for each of the taxable years in issue. First, the record reveals that *87 petitioner consistently and, by his own admission, consciously declined to report substantial amounts of interest income in each of the years before the Court. He selectively reported only some of the interest and dividends from the large number of Form 1099s he received. Second, petitioner kept no records of the income or expenses of the rental property he owned during each of the years in issue. The failure of a taxpayer to maintain adequate records is itself an indicium of fraud. , affg. a Memorandum Opinion of this Court. [6]
In the face of this evidence, petitioner's only explanation for his conduct is that he erroneously believed during the years in issue that he did not have to report interest income on long-term certificates of deposit until the certificates matured and the interest was withdrawn for consumption. Petitioner explains that his failure to report *88 any interest income from certificates of deposit in 1973 and only limited amounts in 1974 followed a pattern wherein he would only report interest on long-term certificates (i.e., certificates having a term of more than one year) when those certificates matured and were not rolled over. Due to his receipt of the first notification from the Andover Service Center of an error in his 1973 returns, petitioner claims, in 1975 and 1976 he changed his pattern of reporting interest on certificates of deposit by changing his definition of a long-term certificate from one with a more than one year term to one with a more than three year term. This whole method, he contends, was suggested to him by newspaper articles in 1973. We find petitioner's claim of unintentional mistakes or misunderstanding of the reporting requirements to be totaling lacking in credibility. First, petitioner has not been able to furnish us with the source of the alleged newspaper stories which prompted him to adopt this reporting method. Second, petitioner persistently failed to report substantial sums of interest income after the Andover Service Center brought omissions to his attention, the tax on which he paid *89 after an explanation by the Service Center. The items of 1973 interest income omission to which the Service Center called petitioner's attention in 1975 were, however, only three out of 12 items of interest income items which petitioner failed to report for 1973. Petitioner also failed to report many items on his 1974 return. Yet even though he received the notice of some 1973 omissions from the Service on December 15, 1975, he not only made no effort to amend his 1973 and 1974 returns to correctly reflect his income for those years, but thereafter filed 1975 and 1976 returns reflecting substantial understatements. A fair inference to be drawn from this inexcusable course of conduct is that petitioner believed he could use this variation of the "audit lottery" to continue avoiding payment of taxes due on interest income undiscovered by the Internal Revenue Service. In addition, and most importantly, respondent demonstrated that petitioner did not in fact even follow the interest reporting method he claims now to have used with regard to his certificates of deposit. It is true that frequently when a certificate of deposit matured either in 1974, 1975 or 1976 petitioner would *90 report interest income earned on that investment at that time, but typically only the interest earned in the year of maturity (i.e., petitioner would fail to report the interest earned by the certificate in previous years). This pattern is not the pattern he now describes. In any event, petitioner on numerous occasions even deviated from the pattern we perceive by 1) failing to report any interest in the year of maturity, 2) failing to report current interest on "short-term" certificates, 3) reporting interest on long-term certificates prior to maturity or withdrawal and 4) underreporting the maturity-year's interest as shown on the respective Form 1099.
Petitioner claims that the numerous errors in applying his system were all innocent mistakes -- that in fact he was trying to follow the pattern he now describes. Petitioner, a college graduate with a Master's degree in electrical engineering, is a computer-engineer with mathematical abilities. That he could have made so many errors in applying this system he allegedly thought was the law strains credulity beyond the breaking point. In fact, the only true pattern that emerges from petitioner's actions is continuous, deliberate *91 and substantial understatement of interest income from certificates of deposit -- income which petitioner well knew to be taxable. When this pattern is combined with petitioner's failure to report certain dividend income, his off-and-on failure to report savings account interest and his failure to report rental and capital gain income during the years in issue -- all underreporting which petitioner has not even attempted to explain -- we can come to only one conclusion: there was a substantial underpayment of tax due to fraud for each of the years in question. In light of this conclusion, respondent's determination of the addition to tax under section 6653(b) for each year in issue is sustained. [7]
*92 Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect during the years in issue. ↩
2. This negative figure reflects respondent's removal of a previously assessed and collected negligence addition in light of his subsequent determination of an addition for fraud. See section 6653(b)(3) and section 301.6653-1(b)(2)(ii), Proced. & Admin. Regs., which prohibits the imposition of both a fraud and negligence addition with respect to the same underpayment of tax.↩
3. Petitioner has apparently abandoned any argument that the underlying deficiencies are incorrect or that the statute of limitations bars the assessment and collection of the deficiencies in 1973 and 1974 either under section 6501(e) or section 6501(c)(4). In any event, the evidence in this case supports both the accuracy of the deficiencies and the timeliness of the issuance of the deficiency notice. See Findings of Fact, infra.↩
4. The transcript reflects the following exchange: Q (BY MR. JOHNSON [Government Counsel]) Mr. Portanova, did you report all of your income on your tax returns for these years? A No, I did not. Q Did you intentionally omit the items of income from your tax returns? A Yes, I did.↩
5. All references to rules are to the Tax Court Rules of Practice and Procedure.↩
6. Although the amount of the net understatement of income attributable to the rental property is small in each year, it should be noted that the section 6653(b) addition may be imposed when any↩ part of any underpayment is due to fraud.
7. Petitioner's argument in his reply brief that the section 6653(b) additions for 1973 and 1974 are overstated is incorrect.The deficiencies determined for those years do not include amounts which had been previously assessed and collected by respondent. In determining the size of the underpayment to which the 50 percent addition is applicable, however, previously adjusted amounts are included with the deficiency. .↩